GINA CROCENZI MASTERSON, et al.    )
                                   )
       Plaintiffs,                 )
                                   )
v.                                 )  1:10cv445(LMB/JFA)
                                   )
BUTLER L. GRANT                    )
                                   )
       Defendant.                  )

## MEMORANDUM OPINION

Before the Court is the defendant's Motion for Summary Judgment [Dkt. No. 79]. For the reasons stated in open court and in this Memorandum Opinion, that motion will be granted, and judgment will be entered in favor of defendant.

## I. Background

This civil rights action, filed pursuant to 42 U.S.C. § 1983, arises out of an interaction between the plaintiffs, Gina Crocenzi Masterson and her husband, John Masterson, (collectively "the Mastersons"), and defendant Butler L. Grant ("Grant" or "Lt. Grant"), a deputy sheriff of Fauquier County, Virginia, at the Gold Cup Steeple Chase races in Warrenton, Virginia on May 3, 2008. Lt. Grant was directing traffic at the Gold Cup races that day, and as the Masterson vehicle was approaching the main exit gate after the races had concluded, Grant became concerned that the vehicle was being driven in a reckless manner; he therefore hit the rear driver's side fender of the car to get the occupants' attention. See Def.'s Undisputed Material Facts ¶¶ 2-3; see also Pl.'s Opp. to

Mot. for Summ. J. at 1 (indicating that plaintiff has "no dispute" with those facts). At the time, Mr. Masterson was driving the car, with Mrs. Masterson riding in the front passenger seat. Id.

After stopping the car, Grant approached the driver's side window to speak with Mr. Masterson, and Mrs. Masterson (hereinafter "Masterson") exited the car from the passenger side of the vehicle and walked around the hood of the car to approach Grant. See id. ¶ 4. Although the parties dispute the exact details of the brief conversation that followed, they agree in general terms that Masterson questioned Grant about why he had stopped their car and that she advised Grant that her husband was a Lieutenant Colonel in the United States Army. See id. ¶¶ 4-7; see also Pl.'s Opp. to Mot. for Summ. J. at 2. Grant responded that he "did not care if her husband was George W. Bush," asked if she wanted to get arrested, and ordered her to get back into her vehicle. Id.

The crux of the parties' dispute concerns what happened next. The plaintiff alleges that Grant used excessive force against her, in violation of her constitutional rights, by grabbing her upper forearms and pushing her back into her car, resulting in bruises and a scratch on her forearms, as well as back and neck sprains. See Pl.'s Opp. to Mot. for Summ. J. at 2-3 (citing Gina Masterson Deposition); see also Pl.'s Amend. Compl. ¶ 13, 28-34. By contrast, Grant contends that he was merely attempting to restrain Masterson and effectuate an arrest, and that his use of force in grabbing Masterson's upper forearms and attempting to handcuff her was

justified by the fact that she was actively resisting arrest. See Def.'s Undisputed Facts ¶¶ 8-14. Although Masterson denies that she resisted arrest, she concedes that she did actively resist what she describes as Grant's "assault," by putting her forearms up "in a protective mode" and "mov[ing] back and forth" in an effort to escape. See Pl.'s Opp. to Mot. for Summ. J. at 2-3. However, she also alleges that she did not know at the time that Grant was a law enforcement officer or that he was attempting to lawfully arrest her. See id.; see also Pl.'s Amend. Compl. ¶¶ 12-13.

After her scuffle with Grant, Masterson was able to get back into her vehicle, and she and her husband drove off.[1] However, Masterson was subsequently arrested and charged in Virginia state court with assault and battery on a police officer (Lt. Grant), a felony under Virginia law, and with "knowingly obstruct[ing] a law enforcement officer in the performance of his duties . . . or fail[ing] or refus[ing] to cease such obstruction without just cause when requested to do so." See Def.'s Undisputed Material Facts ¶¶ 17-18; see also Exs. 5 & 6 (certified copies of warrant of arrest).[2]

---

[1] Virginia state troopers later apprehended the Mastersons, and Mr. Masterson was arrested and charged with two counts of felony assault on a police officer (the two state troopers), misdemeanor failure to obey a police officer, and misdemeanor reckless driving. See Pl.'s Amend. Compl. ¶ 22. The Commonwealth Attorney *nolle prosequied* the misdemeanor failure to obey a police officer charge, but proceeded to trial on the other counts. On December 4, 2008, a jury acquitted Mr. Masterson of both counts of felony assault, but convicted him of reckless driving in a parking lot. Id. ¶¶ 26-27.

[2] Mrs. Masterson was also charged with misdemeanor disorderly conduct, but that charge was *nolle prosequied*. See

3

On June 19, 2008, Masterson pled guilty in Virginia state court to a reduced misdemeanor count of simple assault and battery and to the misdemeanor obstruction charge, and she was sentenced to 365 days, with 350 days suspended, for each conviction. Id. ¶¶ 19-20; see also Pl.'s Opp. to Mot. for Summ. J. at 4 (indicating that plaintiff does not dispute those facts). Masterson did not appeal her convictions, and neither conviction has been overturned or altered in any way by the state courts of Virginia. See Def.'s Undisputed Material Facts ¶ 21.

On April 30, 2010, the Mastersons filed a Complaint pursuant to 42 U.S.C. § 1983 against Grant, the Fauquier County Sheriff, and several Virginia state troopers who were involved in apprehending and arresting them. An Amended Complaint was filed on June 25, 2010. On July 16, 2010, this Court dismissed the civil action as to all defendants except Grant.[3] Accordingly, the sole remaining cause of action in this case is Gina Masterson's claim against Grant under

---

Pl.'s Amend. Compl. ¶ 24.

[3] Plaintiffs had raised a supervisory liability claim against Charlie Ray Fox, Jr., the Fauquier County Sheriff, alleging a failure to adequately train Lt. Grant (Count II), along with a claim against one of the Virginia state troopers for knowingly signing a false sworn statement to a magistrate judge and for maliciously instigating criminal charges against Mr. Masterson (Count III), and a claim against another state trooper for testifying against Mr. Masterson at trial and maliciously cooperating in the prosecution of Mr. Masterson (Count IV). Counts II, III, and IV were dismissed for failure to state a claim by this Court's July 16, 2010 Order. On December 22, 2010, Mr. Masterson filed a Notice of Appeal to the Fourth Circuit, indicating his intent to appeal the dismissal of Count III. Aside from collecting the appeal fees and assigning a case number, the Fourth Circuit has not yet acted on that appeal.

42 U.S.C. § 1983 for excessive use of force in violation of her Fourth Amendment rights. See Pl.'s Amend. Compl. ¶¶ 28-34 (Count I).

On December 30, 2010, defendant filed the instant Motion for Summary Judgment [Dkt. No. 79], contending that summary judgment is appropriate in the defendant's favor because Masterson's guilty pleas in her underlying state court prosecution for assault and battery and obstruction of a law enforcement officer preclude her Section 1983 claims under the principles set forth in Heck v. Humphrey, 512 U.S. 477 (1994), and because the undisputed facts establish that Grant is entitled to qualified immunity as a matter of law. See Def.'s Mot. for Summ. J. at 1.

## II. Standard of Review

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986). The Court must view the record in the light most favorable to the nonmoving party, and must draw all inferences in favor of that party. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002). However, "the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could

reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252; see also Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008). Accordingly, to survive a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." Thompson Everett, Inc. v. Nat'l Cable Adver., LP, 57 F.3d 1317, 1323 (4th Cir. 1995); Poole v. Pass, 351 F. Supp. 2d 473, 478 (E.D. Va. 2005).

### III. Discussion

Summary judgment is warranted in favor of the defendant under Fed. R. Civ. P. 56. First, Masterson's efforts to contradict the factual bases of her guilty pleas by advancing inconsistent arguments in her Section 1983 lawsuit before this Court are barred by the principles of Heck v. Humphrey, 512 U.S. 477 (1994). Because her state court convictions have not been overturned or expunged, her pleas foreclose the relief she requests in this lawsuit. Moreover, the undisputed material facts of this case reveal that no excessive use of force occurred, and that Lt. Grant acted reasonably under the circumstances in attempting to restrain and arrest Masterson. Grant is therefore entitled to qualified immunity as a matter of law.

A.  **Heck** Bars this Action in Light of Plaintiff's Underlying Guilty Pleas

First, on the specific facts of this case, Masterson's guilty pleas to assault and battery and obstruction of a law enforcement officer in the performance of his duties bar her excessive force claim under the principles of Heck v. Humphrey. In Heck, the Supreme Court held that a defendant who was convicted in state court cannot use 42 U.S.C. § 1983 as a means of collaterally attacking his or her conviction in federal court; rather, to recover damages for an allegedly unconstitutional conviction or imprisonment, or for any other harm caused by actions whose unlawfulness would necessarily invalidate the underlying conviction or sentence, a Section 1983 plaintiff must first prove that the underlying conviction or sentence has been reversed, expunged, or otherwise overturned, either on direct appeal or through the issuance of a writ of habeas corpus. See Heck, 512 U.S. at 487. Specifically, the Court ruled that:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id.; see also Harvey v. Horan, 278 F.3d 370, 374-75 (4th Cir. 2002) (following Heck and noting that the Supreme Court

'emphasized that civil tort actions simply are not appropriate vehicles for challenging the validity of outstanding criminal judgments'") (quoting Heck, 512 U.S. at 486).

Heck itself involved a slightly more direct challenge to the underlying state court conviction than Masterson is raising in this case. Masterson's claim, broadly stated, is merely that Grant employed excessive force in restraining and attempting to arrest her, while the plaintiff in Heck alleged in his Section 1983 lawsuit, inter alia, that the defendants, a state law enforcement officer and several local prosecutors, had engaged in an "unlawful, unreasonable, and arbitrary investigation" leading to his arrest and had knowingly destroyed exculpatory evidence. 512 U.S. at 479. The specific facts of Heck are therefore not entirely on all fours with those presented in Masterson's lawsuit. Moreover, in the mine run of cases, an underlying conviction in state court would not necessarily preclude a later civil rights lawsuit for alleged Fourth Amendment violations. After all, police liability for the use of excessive force during arrest typically "bears no relation to [the defendant's] guilt or innocence" on the underlying charge. Snyder v. City of Alexandria, 870 F. Supp. 672 (E.D. Va. 1994) (Ellis, J.) (distinguishing between excessive force claims and guilt or innocence on the underlying charge, albeit not in a case involving assault and battery); see also Haring v. Prosise, 462 U.S. 306 (1983) (holding that a defendant's guilty plea did not bar a

subsequent Section 1983 action challenging the legality of the search which had produced inculpatory evidence against him).

However, in light of the specific factual circumstances presented here, Masterson's guilty pleas to assault and battery and obstruction of a law enforcement officer clearly preclude the arguments she wishes to pursue in this Court. Specifically, Masterson is attempting to assert an excessive force claim against Grant, alleging that he somehow violated her constitutional rights by causing her minimal bruising while restraining her, but she has already admitted that *she* assaulted *him*, in violation of Va. Code § 18.2-57. Under clearly established law, law enforcement officers are entitled to use reasonable force in restraining suspects who are committing assault or resisting arrest. See Graham v. Connor, 409 U.S. 386, 396 (1989) (listing "whether the suspect poses an immediate threat" and "whether [the suspect] is actively resisting arrest" as factors to be considered in evaluating an officer's use of force). As a result, inherent in any finding that Grant used excessive force against Masterson, there would need to be a contemporaneous finding that Masterson did not pose an immediate threat to the safety of Grant or others - a finding that would be deeply inconsistent with Masterson's admissions in state court that she assaulted and obstructed Grant. Such a conclusion would thus threaten to undermine the validity of Masterson's convictions.

In fact, it appears that Masterson is seeking to use this lawsuit, at least in part, as a vehicle for re-litigating the validity and voluntariness of her guilty pleas. For example, in her deposition, Masterson attempted to portray her use of force against Grant as entirely innocent and defensive, claiming that she was only "resisting [Grant's] assault," and that she put her forearms up "in a protective mode" to prevent "her face and breasts [from] being hit." See Def.'s Ex. 1 (excerpts of Masterson Deposition) at 123:6; Pl.'s Ex. 1 (excerpts of Masterson Deposition) at 60:9-10; see also Pl.'s Opp. to Mot. to Dismiss at 2-3 (relying on those excerpts). If she were truly resisting an assault, however, Masterson would have had a viable self-defense argument to the assault and battery charge to which she instead pled guilty. Masterson also claimed in her deposition that she was utterly unaware throughout the duration of the encounter that Grant was even a law enforcement officer. See Def.'s Ex. 1 at 116:15-17 ("Q: At any point during this exchange did you become aware that Grant was law enforcement? A: No."). Yet that assertion is fundamentally at odds with her conviction for "*knowingly* obstruct[ing] a . . . law-enforcement officer . . . in the performance of his duties." Va. Code § 18.2-460(A) (emphasis added); see also Jones v. Commonwealth, 141 Va. 471, 478-79 (1925) (holding that "[t]o constitute obstruction of an officer in the performance of his duty, . . . there must be acts clearly indicating an intention on the part of the accused to prevent the

officer from performing his duty")(internal citations omitted).
Finally, although Masterson admits that she never appealed her
state convictions or challenged them in a habeas petition, she
asserted in her deposition in connection with this case that her
guilty pleas were involuntary, suggesting that her attorney
"forced" her into accepting the plea agreement. See Def.'s Ex. 1
at 93:15-95:5 ("Q: And you voluntarily accepted that plea
agreement? A: No. Q: Who forced you to take that plea agreement?
A: The lawyer.").

The principles of Heck exist to preclude defendants from
making precisely those types of arguments against their state
convictions by means of this sort of collateral litigation in
federal court. Indeed, the critical issue in determining if Heck
bars Masterson's Section 1983 lawsuit is whether a judgment in
favor of Masterson on her excessive force claim would "necessarily
imply" the invalidity of her underlying convictions for assault
and battery and obstructing a law enforcement officer. In this
case, not only would a judgment in Masterson's favor imply the
invalidity of her convictions, but Masterson herself is now
advancing arguments that her convictions were invalid.
Accordingly, her requested relief plainly falls outside the scope
of what this Court is empowered to grant.

The Court therefore finds the reasoning of Hayes v. Murch,
No. 3:08-cv-712, 2010 W.L. 3257841 (E.D. Va. Aug. 17, 2010)
(Williams, J.), persuasive. In Hayes, the court held that a

plaintiff who was incarcerated in a Virginia prison could not bring a Section 1983 lawsuit against a deputy for excessive force when that lawsuit was explicitly premised on the plaintiff's allegations that he was the victim of an unprovoked assault by the defendant and that he himself "never struck [the defendant]" at all. Id. at *1. The Hayes plaintiff's averments that he never struck the deputy directly "clearly undermine[d] the factual basis of his conviction for committing felony assault" on the deputy, and his Section 1983 claim was therefore dismissed on Heck grounds. Id. at *2. This case is no different. Masterson's attempt to cast herself in the role of the victim of an unprovoked arrest involving the use of unconstitutionally excessive force simply cannot square with her underlying state court convictions, which have never been overturned or expunged. Because the gravamen of Masterson's Complaint rests on her alleged innocence of the charges to which she pled guilty in Virginia court, the principles underlying Heck bar this action.[4]

---

[4] At the very least, the doctrine of collateral estoppel precludes Masterson from re-litigating issues that were already decided against her in state court. See Allen v. McCurry, 449 U.S. 90 (1980) (applying issue preclusion principles to a Section 1983 lawsuit when the plaintiff's arguments in federal court contradicted findings by the state court regarding the constitutionality of law enforcement action). Accordingly, Masterson cannot plausibly argue, for example, that she did not know that Grant was an officer of the law, when she plead guilty to *knowingly* obstructing a law enforcement officer in the performance of his law enforcement duties.

B.  **Lt. Grant is Entitled To Qualified Immunity as a Matter of Law**

Even if not barred by <u>Heck</u>, this civil action fails because the undisputed facts of this case establish that Grant acted as a reasonable officer would under the circumstances and that he is therefore entitled to qualified immunity as a matter of law.

The doctrine of qualified immunity "shields government officials performing discretionary function[s] from civil liability insofar as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Johnson v. Garraghty</u>, 57 F. Supp. 2d 321, 329 (E.D. Va. 1999) (Ellis, J.) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817 (1982)). In evaluating a defense of qualified immunity, a district court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, constitute a violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation.[5] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001).

---

[5] Under <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808 (2009), that two-step inquiry, originally established as a rigid "order of battle" in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), can now be completed in either order.

13

For Fourth Amendment excessive force claims like Masterson's, the standard is one of "objective reasonableness." See Graham v. Connor, 490 U.S. 386, 395 (1989) (holding that "all claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard"). Specifically, the court must determine whether, on the particular facts of the case, "a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996). The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene," and the factors to be considered in that calculus include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

In this case, the undisputed material facts cannot give rise to a valid Fourth Amendment claim for excessive force. Masterson concedes that she "actively resisted" Grant, see Def.'s Ex. 1 at 123:5-6, and her guilty pleas constitute admissions that she committed an assault and battery on Grant and obstructed him in the performance of his duties. Grant was therefore plainly entitled to attempt to arrest her after witnessing her commit those crimes, and the severity of her conduct in assaulting an officer of the law justified at least some minimal use of force in restraining her.

Moreover, the undisputed facts establish that minimal force is all that Grant employed. Masterson herself admits that any actual physical contact between the parties lasted only approximately five seconds, see Def.'s Ex. 1 at 59:17-20, and her husband testified in his deposition that the entire encounter took no longer than ten to fifteen seconds at the most, see Def.'s Ex. 2 (excerpts of John Masterson Deposition) at 38:10-16. Additionally, although Masterson claims that she was bruised on her upper forearms by Grant's grip, she never submitted photographs of that bruising to the Court, and her attorney admitted at oral argument on defendant's Motion for Summary Judgment that the bruises were so minor that they faded quickly of their own accord, without Masterson ever seeking medical attention or treatment for them. Such *de minimis* injuries cannot support a claim for excessive use of force. See Felton v. Chupik, No. 00-cv-1889, 2002 WL 32344335, at *4 (E.D. Va. Aug. 21, 2002) (Brinkema, J.). Finally, the undisputed facts reveal that any force used by Grant in this case was not excessive, but in reality was insufficient, as Masterson was ultimately able to escape Grant's grasp and flee the scene. See Def.'s Ex. 2 at 26:12 - 27:12 (excerpts of John Masterson Deposition, describing how he helped Masterson back into the car and then drove away from the scene).

For all these reasons, even taking the facts alleged in the light most favorable to Masterson, the evidence adduced simply does not support a claim for a violation of the Fourth Amendment or any other constitutional provision, and Grant is therefore

entitled to qualified immunity and summary judgment in his favor as a matter of law.

## IV. Conclusion

For the reasons stated above, defendant's Motion for Summary Judgment [Dkt. No. 79] will be granted and judgment will be entered in favor of defendant Grant by an Order to be issued with this Memorandum Opinion.

Entered this 25th day of January, 2011.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge